Sabinal Independent School District has appealed from a judgment that it take nothing as against the County Board of School Trustees of Uvalde County, Texas, and the Knippa Independent School District.
The Sabinal District, as plaintiff, sought to enjoin the enforcement of an order of the County Board dated May 16, 1947, detaching some 20 square miles of territory from the Sabinal Independent School District and attaching same to the Knippa Independent School District. Both districts are located in Uvalde County, Texas.
The Sabinal Independent District is a rural high school district, that is, the Trio Independent School District is annexed to said Sabinal District for high school purposes, in accordance with the provisions of Title 49, Chapter 19A, Article 2922a et seq., Vernon's Ann.Civ.Stats. See Trio Independent School Dist. v. Sabinal Independent School Dist., Tex. Civ. App. 192 S.W.2d 899. Of the territory involved in this dispute about three square miles were taken from the Trio elementary district and seventeen square miles from the Sabinal elementary district. The Knippa District is not a Title 49, Chapter 19A, rural high school district, but maintains both elementary and high schools as an independent school district.
The proceedings for the purpose of detaching the territory from the Sabinal District and attaching the same to the Knippa District were had under and in pursuance of the provisions of Acts 1929, 41st Legislature, First Called Session, page 106, chapter 47, Article 2742f, Vernon's Ann.Civ.Stats. As we view it, the controlling issue in the case is whether or not the 1929 Act is applicable to rural high school districts such as the appellant district here involved.
The facts are practically undisputed, being for the most part covered by stipulation. We must assume that the trial judge drew all permissible fact inferences in favor of the judgment, as no express findings of fact and conclusions of law appear in the record.
It appears that over ninety per cent of the qualified voters of the territory sought to be transferred from the Sabinal District to the Knippa District signed a petition requesting that the transfer be made. It further appears that there are about twenty-six scholastics in the area involved and that they are enrolled in the schools of the Knippa Independent School District. At the time the petition was being circulated and prior thereto, the Sabinal District was not sending school buses into the territory involved for the purpose of transporting children to the Sabinal schools. This probably would have been a useless thing, as it appears rather definitely that the parents in the disputed area preferred to send their children to the Knippa schools.
The territory involved in the detachment did not amount to over ten per cent of the total area of the Sabinal District. After due notice and hearing, the county board ordered the transfer made to the Knippa District and adjusted the bonded indebtedness as between the districts in accordance with the assessed valuation of property in the area transferred compared with the total assessed valuation of the property in the district prior to the transfer. The Knippa District has assumed payment of the proper proportionate part of this indebtedness and has accepted jurisdiction over the territory in accordance with the order of the County Board.
It has been held that the matter of approving a transfer of territory under Article 2742f is discretionary with the County Board, Schlemmer v. Board of Trustees of Limestone County, Tex. Civ. App. 59 S.W.2d 264, wr. ref., and we think *Page 333 
the trial judge could properly conclude from the record that a transfer was desirable and the County Board had not abused its discretion in approving the same.
Consequently, a question of authority alone is presented, which may be stated as follows: Has the Legislature authorized the County Board to detach territory lying within the boundaries of a rural high school district ?
The statutory enactment relied upon by the appellees reads as follows:
"AUTHORIZING COUNTY BOARD TO DETACH TERRITORY FROM ONE SCHOOL DISTRICT AND ATTACH IT TO ANOTHER.
"H. B. No. 25.
 CHAPTER 47.
"An Act authorizing the County Board of Trustees of each organized county to detach from one and add to another school district territory contiguous to the common boundary line of the districts affected; providing for the adjustment of outstanding indebtedness; repealing laws in conflict; and declaring an emergency.
"Be it enacted by the Legislature of the State of Texas:
"Section 1. In each county of this State the County Board of Trustees shall have the authority, when duly petitioned as herein provided, to detach from and annex to any school district territory contiguous to the common boundary line of the two districts; provided the Board of Trustees of the district to which the annexation is to be made approves, by majority vote, the proposed transfer of territory and provided further, that where the territory to be detached exceeds ten per cent (10%) of the entire district the petition must be signed by a majority of the trustees of said district in addition to a majority of the qualified voters of the territory to be detached. The petition shall give the metes and bounds of the territory to be detached from the one and added to the other district and must be signed by a majority of the qualified voters residing in the said territory so detached. Upon receipt of the said petition, duly signed, and upon notice of the approval of the proposed annexation by the Board of Trustees of the district to which the territory is to be added, the County Board of Trustees shall pass an order transferring the said territory and redefining the boundaries of the districts affected by said transfer, the said order to be recorded in the Minutes of the County Board of Trustees. Provided that no school district shall be reduced to an area of less than nine square miles.
"Sec. 2. Any outstanding indebtedness affected by changes in the boundaries of school districts shall be adjusted by the County Board of Trustees as provided in Sections 10, 11 and 12, of Chapter 84, Acts of the 40th Legislature, First Called Session.
"Sec. 3. All laws and parts of laws, General and Special, in conflict herewith are hereby repealed, and Sections 1, 2, 3, and 4 of Chapter 84, Acts of the 40th Legislature, First Called Session, and Article 2765, Revised Civil Statutes, 1925, are specifically repealed.
"Sec. 4. The fact that there is an immediate and imperative need of a more practicable method of providing for creation and change of school districts creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House he suspended, and the same is hereby suspended, and that this Act shall take effect from and after its passage, and it is so enacted." Acts 1929, 41st Leg. First Called Session, p. 106, Ch. 47.
The Act hereinabove quoted is subsequent in time to the Rural High School Act, Acts 1925, 39th Leg. p. 204, Ch. 59. It expressly provides that the County Board "shall have the authority * * * to detach from and annex to any school district territory contiguous to the common boundary line of the two districts."
In commenting upon this language, in Prosper Independent School District: v. Collin County School Trustees, Tex. Civ. App. 51 S.W.2d 748
(affirmed Tex.Com.App., 58 S.W.2d 5), Chief Justice Jones of the Dallas Court of Civil Appeals said [Tex. Civ. App. 51 S.W.2d 750]: *Page 334 
"We overrule appellants' contention that said chapter 47 applies only to common school districts. Section 1 empowers a county board of trustees `to detach from and annex to any school district territory contiguous to the common boundary line of the two districts.' Certainly the term `any school district territory' is comprehensive enough to embrace both common school districts and independent school districts, and the Legislature having used such general term, the courts are not authorized to place a restriction on its meaning and exclude from its application a school district clearly within the meaning of such general term. The same reason that would apply to changing the boundary line of a common school district by detaching some of its territory and attaching same to another common, or an independent, school district, will also apply to changing the boundary line of an independent school district in order to attach some of its territory to another independent school district. The act in question was manifestly enacted for the convenience of those patrons who live contiguous to two school districts without regard to the kind of district, whether common or independent, and was not enacted for the special benefit of any district."
The term "any school district" is broad enough to cover a rural high school district and the 1929 Act, Article 2742f, has been applied to rural high school districts. Ovalo Rural High School District No. 19 v. County Board of School Trustees of Taylor County, Tex. Civ. App.95 S.W.2d 472, and Schlemmer v. Board of Trustees of Limestone County, Tex. Civ. App. 59 S.W.2d 264, but, as pointed out by appellant, the exact questions raised on this appeal were not urged upon the appellate courts in the cases cited. It seems to have been rather assumed or conceded in these two cases that the 1929 Act did apply to rural high school districts.
Appellant first urges that rural high school districts constitute a special class of school districts, created and governed by special legislative enactments, and are not subject to the provisions of general enactments such as Article 2742f.
We are unable to agree with this contention. The Rural High School District Act and amendments thereto, considered in themselves as a special part of the Texas Revised Civil Statutes, make no provision for the transfer of territory from one district to another. If it be desirable under certain conditions to transfer territory from one independent school district to another, and the Legislature has said that it is, it would seem likewise desirable to provide for the transfer of territory from or into a rural high school district. For instance, in this case we have three independent school districts involved, the Sabinal, the Trio and the Knippa. Had the Trio not been annexed to the Sabinal for high school purposes there could be little doubt that Article 2742f would have application. From an examination of the provisions of the Rural High School Act, we find no compelling reason for holding that territory in the Sabinal and the Trio districts can not be detached therefrom and transferred to the Knippa District, simply because the Sabinal and Trio together compose a rural high school district.
Appellant relies upon the City of Beaumont Independent School District v. Broadus, Tex. Civ. App. 182 S.W.2d 406, wr. ref. in which it was held that a municipally operated school district could enlarge its boundaries at the expense of an adjacent school district by extending the city limits of the municipality in accordance with Article 2804, Vernon's Ann.Civ.Stats., and that said Article 2804 was not repealed by the passage of the 1929 Act, that is Article 2742f. The Court simply held that there was an available statutory method for annexing territory to a municipally operated school district and that said method had been carried out by the City of Beaumont. However, there is no comparable method of detaching territory from one district and transferring it to another provided for in the Rural High School Act, so it would seem that the 1929 general act, which uses the term "any school district," should apply.
The opinion of Chief Justice Rice of the Waco Court in Trustees of Cranfills Gap. Consol. School Dist. No. 6 of Bosque and Hamilton Counties v. Board of County School Trustees of Bosque County, Tex. Civ. App.178 S.W.2d 537, wr. ref., points to *Page 335 
a holding that Article 2742f applies to rural high school districts. The district involved in the case cited was a county line district Special statutory enactments relate to these districts. They are more than what is described by appellant as general "millrun" districts, yet it was held that Article 2742f was applicable. By reason of continually changing conditions, construction of new roads, development of new forms and methods of agriculture, etc., there are serious disadvantages to the "freezing" of school district boundary lines. We are unwilling to attribute such intention to the Legislature unless the same be clear and unequivocal. We are of the opinion that Article 2742f applies to rural high school districts unless they are expressly exempted from the operation thereof; a matter which we next discuss.
Appellant's contention that rural high school districts are specially excluded from the Act relied upon by appellees is based upon the following facts.
In 1927, the 40th Legislature, Acts 1927, 40th Leg., 1st C. S. p. 228, ch. 84, Article 2742b, Vernon's Ann.Civ.Stats., passed an Act relating to school districts which had the following caption:
"An Act to provide for increasing or diminishing the area of an Independent School District upon petition of qualified resident property taxpaying voters; providing for the formation of new districts by the County Board out of territory detached from independent Districts; providing for increasing or diminishing the area of Common School Districts or abolishing Common School Districts by the County Board upon a vote of a majority of the qualified voters in the district affected; removing the maximum limit on the area of an Independent School District and validating all school districts heretofore created; providing for the manner of electing County Trustees; providing for the establishment or consolidation of County Line School Districts; providing for the adjustment of district properties and bonded indebtedness against such a just and equitable basis and repealing all laws, general or special, in conflict herewith, and declaring an emergency."
"Section 1 of Chapter 84 provided for the annexation of territory out of a common school district to a contiguous independent school district through the method of an election held by the voters residing in the affected territory. Section 2 of the same Act provided a method for detaching territory from an independent or common school district to be annexed to some other independent or common school district for the purpose of forming a new district. Section 3 provided for an election to bring about the abolition of a common school district and the annexing of its territory to one or more contiguous school districts. Section 4 contained provisions restricting or limiting the proceedings in the first three sections." City of Beaumont Independent School Dist. v. Broadus, Tex. Civ. App. 182 S.W.2d 406, 410.
Section 5 provided for the formation of an independent school district from common school districts under certain conditions. Section 5a provided for the consolidation of common school districts. Section 6 validated certain school districts.
Section 7 reads as follows:
"Nothing in any provision of this Act shall repeal or effect the law enacted by the Regular Session of the 39th Legislature, providing for the creation of rural high schools."
Section 8 related to the election of County Trustees. Section 9 provided for the adjustment of indebtedness between districts upon a change of boundaries. Sections 10, 11 and 12 provided for the details of such debt adjustment. Sections 13, 13a and 14 constituted the repealing severability and emergency clauses of the Act, respectively.
The 1929 Act, heretofore set out, expressly repeals Sections 1, 2, 3 and 4 of the 1927 Act and refers to Sections 10, 11 and 12 thereof in reference to the details of the adjustment of indebtedness between districts upon a change of boundaries.
It is appellant's contention that the 1929 Act is amendatory of the 1927 Act, and, consequently, should be considered as one Act of the Legislature which would make Section 7 of the 1927 Act, Article 2742b, § *Page 336 
7, applicable to Section 1 of the 1929 Act, Article 2742f, § 1.
While the 1929 Act repealed four sections of the 1927 Act and referred to three sections of said 1927 Act as providing a method for the adjustment of indebtedness between the districts upon a change of boundaries, we do not believe the 1929 Act can be regarded as merely amendatory of the 1927 Act. After the repeal of Sections 1 to 4, inclusive of the 1927 Act, Article 2742b, there remains a statutory enactment fairly complete within itself. There is nothing in the caption or the provisions of the 1929 Act which expressly states that the purpose of the Act is merely to amend the 1927 Act. We are unwilling to indulge an implication to that effect. We therefore hold that the provision that "nothing in any provision of this Act shall repeal or affect the law enacted by the Regular Session of the 39th Legislature, providing for the creation of rural high schools" applies only to the 1927 Act (of which it is a part) and does not apply to the 1929 Act, Article 2742f.
Appellant's first, second and third points, of error are overruled.
By its fourth and final point, appellant contends that Article 2766, Vernon's Ann.Civ.Stats., has application to the situation disclosed by the record here.
Article 2766 was part of the original act of 1905, Acts 1905, 29th Leg. p. 263, ch. 124, § 52, and reads as follows:
"The commissioners court of any county shall have the authority to change the boundaries of any independent district incorporated for free school purposes only, situated in said county, when in the judgment of said court the public good demands such change; provided, that the president of the board of trustees of the independent district to be affected by the proposed change shall first be notified, and said board of trustees shall have the right to be heard in case there is opposition to the change. No such change shall be made that would reduce the total value of taxable property in any independent district against which there are outstanding bonds legally issued."
The Sabinal rural high school district, prior to the detachment of the territory here involved, had an outstanding bonded indebtedness of $27,000. The transfer of territory to the Knippa District obviously reduced the total amount of taxable property in the Sabinal District. However, in accordance with the provisions of Article 2742f the bonded indebtedness of the district was adjusted accordingly. No creditor complains of this adjustment, nor does the appellant say that it was inequitable or unfair. The contention is that the change in boundary was unauthorized and was precluded by Article 2766.
The 1929 Act, Article 2742f, is the later act. It authorizes an adjustment of indebtedness between school districts upon a change of boundary as was done in this case. This enactment is constitutional and valid. We overrule appellant's fourth point. Prosper Independent School District v. Collin County School Trustees, Tex. Civ. App. 51 S.W.2d 748, affirmed Tex.Com.App., 58 S.W.2d 5; State ex rel. Flores v. Bravo, Tex. Civ. App. 162 S.W.2d 1052, wr. ref.; Trustees of Cranfills Gap Consolidated School District No. 6 of Bosque and Hamilton Counties v. Board of County School Trustees of Bosque County, Tex. Civ. App.178 S.W.2d 537, wr. ref.
The judgment appealed from is affirmed.