STATE ex rel. TEXAS CITY INDEPENDENT SCHOOL DIST. et al. v. LA MARQUE INDEPENDENT SCHOOL DIST. et al.

No. 12502.

Court of Civil Appeals of Texas. Galveston.

May 14, 1953.

Rehearing Denied June 4, 1953.

Godard & Dazey and William B. Dazey, both of Texas City, for appellant.

Levy & Levy, Adrian F. Levy, Sr., and Adrian F. Levy, Jr., Galveston, for appellee Galveston Independent School District.

Vinson, Elkins, Weems & Searls, William E. Davis, Jr., and Victor W. Bouldin, all of Houston, for appellee Dickinson Independent School District.

GRAVES, Justice.

The State of Texas, on relation of the Board of Trustees of the Texas City Independent School District, and its members, filed this suit, in the nature of quo warranto and mandamus against the La Marque, Dickinson, and Galveston Independent School Districts, and the members of their respective Boards of Trustees, in the District Court of Galveston County, Texas. The original petition was amended to include Galveston County's Board of School Trustees.

The petitioner prayed the Court to compel the County Board of School Trustees to act upon a petition offered to it, and to grant an annexation to Texas City Independent School District of certain areas, including parts of the La Marque, Dickinson, and Galveston Independent School Districts.

The La Marque Independent School District answered, and set up the fact that it had reached an agreement with the Texas City District, and took no part in the trial.

The Court held for the Defendants on all points, and denied the relief prayed for. From this decision the State of Texas, and the Texas City Independent School District, prosecute this appeal.

The trial court sat without a jury, and filed these Findings of Fact and Conclusions of Law, in support of its judgment:

"Findings of Fact:

"1. The Galveston Independent School District has territorial limits which are co-extensive with the corporate limits of the City of Galveston, as set out' and described in the Charter of the City of Galveston which was approved by the Legislature of Texas on April 18, 1901; the northern limits of said School District are definite and certain and have long been established and recognized both as the northern limits of said School District and of the City of Galveston;

"2. The Texas City Independent School District was established by order of the Commissioners' Court of Galveston County on January 11, 1905, and its boundaries were defined by said Commissioners' Court on May 1, 1911, to include 1254.45 acres out of the S. C. Bundick League;

"3. No boundary of the Galveston Independent School District has ever been contiguous to or in conflict with any boundary of the Texas City Independent School District;

"4. At a meeting of the County Board of School Trustees of Galveston County (sometimes in the record referred to as the County School Trustees of Galveston County and as the County Board of Education of Galveston County), hereinafter called County Board, held on December 18, 1937, the said County Board adopted a resolution to extend the territorial limits of Common School District No. 9 (Port Bolivar School District); the County Board further instructed its Secretary, Mrs. Kathleen Bradford Benson, then County School Superintendent of Galveston County, 'to look into the matter of the boundaries of other districts which might also have water areas added to them, viz.: Districts Nos. 1, 6, 11, 17, 21, and Texas City, if they so desired, and to write them similar notifications' to the one to be sent to the trustees of Common School District No. 9; (Common School District No. 17 was the La Marque School District and Common School District No. 21 was the San Leon School District.);

"5. On February 1, 1938, Mrs. Kathleen Bradford Benson, then County School Superintendent of Galveston County, appeared before the Board of Trustees of the Texas City Independent School District and advised the members thereof that the County Board intended to annex submerged lands to adjacent school districts; at the conclusion of her remarks, the members of the said Texas City Board advised Mrs. Benson that the Board would check into the matter;

"6. At a meeting of the County Board held on October 15, 1938, a resolution was adopted, extending the boundaries of Districts Nos. 1, 6, 9, 11, 17 and 21 to include adjacent water areas; at that meeting, Mrs. Benson reported that all of the schools concerned, namely, Districts Nos. 1, 6, 9, 11, 17, and 21 and the Texas City Independent School District had been notified, in writing, of the County Board's contemplated action, and each, with the exception of the Texas City Independent School District, had sent in its written approval; the Texas City Independent School District made no reply; no action was taken with regard to the said Texas City District, and the water area East of the said Texas City District was left unassigned;

"7. At the meeting of the County Board, held on October 15, 1938, the County Board:

"a. Annexed to the La Marque Independent School District certain submerged lands and redefined the boundaries of said La Marque District, which order was approved by the County Commissioners' Court on February 6, 1939; and

"b. Annexed to Galveston County Common School District No. 21 (San Leon) certain submerged lands under Moses Lake, Dollar Bay, and Galveston Bay, and redefined the boundaries of said Common School District No. 21, which order was approved by the County Commissioners' Court on February 6, 1939;

"8. On January 29, 1941, Galveston County Common School District No. 7 became the Dickinson Independent School District;

"9. On August 3, 1948, as the result of an election, the County Commissioners' Court declared that Galveston County Common School District No. 21 (San Leon) was duly consolidated with the Dickinson Independent School District, after which date the Dickinson Independent School District included within its boundaries all of the territory formerly within the boundaries of said Common School District No. 21, as defined in the order of October 15, 1938, mentioned in Paragraph 7 hereinabove, and the present common boundaries between the Dickinson Independent School District and the Texas City Independent School District are those defined in said order of October 15, 1938; and that portion of Moses Lake, Dollar Bay, and Galveston Bay, which was by said order, annexed to said Common School District No. 21, is now within the duly constituted boundaries of the said Dickinson Independent School District;

"10. During the latter part of 1948, the then Secretary of the Board of Trustees of the Texas City Independent School District, Mr. Edward Jaeger, after a lapse of more than ten years, first checked into the action taken by the County Board on October 15, 1938; Mr. Jaeger then took the matter before the Board of Trustees of the Texas City Independent School District; subsequently, on November 10, 1948, Mr. Jaeger appeared before the County Board, and thereafter the Texas City Independent School District placed the matter in the hands of Mr. William B. Dazey, an attorney at law;

"11. On September 30, 1949, Mr. Dazey appeared before the County Board, in behalf of the Texas City Independent School District, and the members of said County Board recommended to Mr. Dazey that he obtain agreements between the school districts involved; on December 15, 1949, Mr. Dazey again appeared before the County Board in behalf of the Texas City Independent School District;

"12. On July 10, 1950, Mr. John Shirley, an associate of Mr. Dazey, appeared before the County Board and presented a written petition, in which the Texas City Independent School District prayed that the County Board detach certain territory from the La Marque, Dickinson, and Galveston Independent School Districts, and annex the same to the said Texas City District; said petition did not give a metes-and-bounds description of the territory to be detached from the La Marque, Dickinson, and Galveston Independent School Districts, respectively, and was not signed by a majority of the qualified voters residing in the territories sought to be detached—there being, in fact, no persons residing on any of the territories sought to be detached;

"13. On September 7, 1950, the Texas City Independent School District filed an appeal with the State Commissioner of Education, Dr. J. W. Edgar, in Austin, Texas, complaining of the County Board, the La Marque Independent School District, and the members of its Board of Trustees, the Galveston Independent School District, and the members of its Board of Trustees, and the Dickinson Independent School District, and the members of its Board of Trustees, praying for redistricting and redefining of territories; this petition was set for hearing on November 20, 1950;

"14. On November 15, 1950, the County Board denied the request of the Texas City Independent School District to take the Dollar Bay and Moses Lake area from the Dickinson Independent School District and assign it to the Texas City Independent School District but did make certain changes in other boundaries, affecting the

Texas City, La Marque, and Galveston Independent School Districts; the said State Commissioner of Education was advised of the action taken, and the hearing, which had been set for November 20, 1950, was postponed;

"15. On November 16 and 18, 1950, the Galveston, La Marque, and Dickinson Independent School Districts filed notice of appeal with the State Commissioner of Education from the action taken by the County Board on November 15, 1950;

"16. On December 1, 1950, the County Board held a special meeting, at which meeting approval of the action taken at the meeting of November 15, 1950, was deferred, and a public hearing was set for December 14, 1950;

"17. On December 14, 1950, the County Board held a special meeting, at which meeting the action taken at the meeting of November 15, 1950, was rescinded, and all school district boundaries were restored as they had been prior to November 15, 1950, and thirty days were allowed during which an appeal might be made;

"18. On March 5, 1951, this suit was filed, on the relation of the Texas City Independent School District, against the La Marque Independent School District and the members of its Board of Trustees, the Galveston Independent School District and the members of its Board of Trustees, and the Dickinson Independent School District and the members of its Board of Trustees;

"19. On March 7, 1951, the Texas City Independent School District filed with the County Board a supplemental petition, describing by metes and bounds the land alleged to be in controversy between it and the Dickinson and La Marque Independent School Districts, respectively;

"20. On February 28, 1952, the Texas City Independent School District filed in this suit its first amended original information and petition, bringing in as additional respondents the County School Trustees of Galveston County and the Commissioners' Court of Galveston County, and its members;

"21. The County School Trustees have duly considered the petitions of the Texas City Independent School District to change the limits and boundaries of the Dickinson Independent School District, the Galveston Independent School District, and the La Marque Independent School District, respectively, and to detach from each of said Districts certain territory and attach same to the Texas City Independent School District, and, for reasons deemed proper and reasonable, have refused to grant such petitions; and

"22. The County School Trustees, in failing or refusing to grant the Texas City Independent School District the relief sought, did not act fraudulently, arbitrarily, or in abuse of the authority, judgment, and discretion reposed and vested in them by the laws of Texas.

"Conclusions of Law:

"1. The boundaries of the Galveston Independent School District have been duly ratified and confirmed many times by appropriate validing acts of the Legislature of Texas and are now the true and lawful limits and boundaries of said Districts;

"2. The boundaries of the Texas City Independent School District have been duly ratified and confirmed many times by validating acts of the Legislature of Texas, and are now the true and lawful limits and boundaries of said District;

"3. The boundaries of the La Marque Independent School District have been duly ratified and confirmed by validating acts of the Legislature of Texas, and are now the true and lawful limits and boundaries of said District;

"4. The boundaries of Galveston County Common School District No. 21 (San Leon), prior to the time of its consolidation with the Dickinson Independent School District, on August 3, 1948, were duly ratified and confirmed by validating acts of the Legislature of Texas;

"5. The boundaries of the consolidated Dickinson Independent School District have been duly ratified and confirmed by validating acts of the Legislature of Texas, and are now the true and lawful limits and boundaries of said District;

"6. There is no common boundary line between the Texas City Independent School

District and the Galveston Independent School District to authorize the County Board to detach 'territory contiguous to the common boundary line of the two districts' from the Galveston Independent School District and attach it to the Texas City Independent School District, as required by Art. 2742f, Section 1 of the R.C.S. of Texas, 1925 [Vernon's Ann.Civ.St. art. 2742f, § 1.];

"7. The Texas City Independent School District has never filed with the County Board of Trustees a petition giving a metes and bounds description of the 'territory' that it seeks to have detached from the Galveston Independent School District and annexed to itself, as required by Art. 2742f, Section 1, of the R.C.S. of Texas, 1925;

"8. The Texas City Independent School District has never filed with the County Board of Trustees a petition*e* signed by a majority of the qualified voters residing in the territory so to be detached, as required by Art. 2742f, Section 1, of the R.C.S. of Texas, 1925;

"9. The Texas City Independent School District elected to appeal to the State Commissioner of Education (who now has all of the powers and duties previously vested in the State Superintendent of Public Instruction, under Art. 2654–5, Section 1, of the R.C.S. of Texas, 1925), by filing its appeal in Austin on September 7, 1950, and cannot resort to the courts, until it has exhausted its remedy in the school channels, under Art. 2686, of the R.C.S. of Texas, 1925; until such rulings are obtained, no resort may be made to the courts;

"10. Although the cause was filed in the Tenth District Court on March 5, 1951, the Texas City Independent School District, on March 7, 1951, filed with the County Board a, supplemental petition, describing by metes and bounds the land alleged to be in controversy between it and the Dickinson and La Marque Independent School Districts, respectively; the Texas City Independent School District cannot be permitted to make use of, at the same time, both channels of relief afforded by the State of Texas, namely, the regular school administrative system and the courts; by filing the said supplemental petition, the Texas City Independent School District admitted that final action had not been taken in the school administrative system;

"11. The County Board has not abused its discretion in refusing the request of the Texas City Independent School District, and the County Board has not acted arbitrarily, unreasonably, or fraudulently, in refusing the request of the Texas City Independent School District; the County Board's action, in refusing the request of the Texas City Independent School District, was reasonably supported by substantial evidence; and

"12. The Texas City Independent School District has failed to present evidence to substantiate its allegations that the action of the County Board was arbitrary, unreasonable, or otherwise improper, and said District is not entitled to the relief here sought.

(Signed)  Donald M. Markle
Judge of the 10th District Court,
Galveston County, Texas"

In addition, by joint agreement of all parties to the appeal, the Court sent up with the record all original documentary exhibits, including maps and other documents, as introduced by all parties.

In this Court appellants present a total of eight points of error, the first two complaining of the trial court's refusal to declare the north boundary line of the Galveston District void for uncertainty, and refusing to define the southern boundary of the Dickinson District as bisecting Moses Lake and Galveston Bay, as urged by appellants; the third challenging the court's finding that the northern limits of the Galveston District had been duly ratified by validating acts of the Legislature; the fourth and sixth criticizing the court's action in having sustained certain exceptions of the appellees to certain features of appellants' pleadings; the fifth relating to the court's excluding a deposition of the State Commissioner of Education; the seventh complaining of the court's refusal to admit into evidence a letter of the appellants' counsel to its Board of County

School Trustees dated August 23, 1951; and, the eighth challenging the court's refusal to compel appellants' Board of County School Trustees to correct its minutes of October 15, 1936 by a later nunc pro tunc order.

Since all of appellants' so-summarized presentments have been dealt with in detail by the quoted findings of both sorts of the trial court, it is deemed unnecessary to particularize them further.

█ They each and all are overruled. This, for the primal and over-all reason that, following its study of the record, briefs, and the oral arguments for all the parties, this Court has not found any of the quoted fact-findings of the trial court to be unsupported by the evidence, nor any of its stated "conclusions of law" to be violative of our Texas law, wherefore, it adopts such Conclusions—without feeling a need to repeat them—as the law of this case. It may not be amiss, however, to here refer to some of the statutes, rules and court opinions it is thought required the trial court's action. Upon the face of the record two insuperable conditions stand out: (1) all the territory appellants so sought to annex was water; (2) no part of appellants' district, which it sought to so extend, was contiguous to any boundary, or part of, the long-established Galveston District. Articles 2742f, 2742g, 2742i, 2742k, 2742o, 2815g–3, 2815g–7, 2815g–8, 2815g–12, 2815g–25, 2815g–29, 2815g–33, 2815g–36, 2815g–38, 2815g–39, 2815g–43, V. A.T.S.; Treaccar v. City of Galveston, Tex.Civ.App., 28 S.W.2d 887 (W.E. ref.); State ex rel. Richardson v. Larkin, 41 Tex. Civ.App. 253, 90 S.W. 912 (W.E. ref.); 7 Tex.Jur. pages 115, 127, 151, 157, 158, 160, 252; 30 Tex.Jur. page 51; 37 Tex. Jur. page 907.

█ As the trial court found, as well as concluded as a matter of law, the County Board under Article 2742f, Vernon's Annotated Civil Statutes, had the power and authority to establish and change boundaries of the school districts. Prosper I. S. D. v. Collin County Trustees, Tex.Civ. App., 51 S.W.2d 748, affirmed, Tex.Com. App., 58 S.W.2d 5; Sabinal I. S. D. v. County Board of School Trustees, Tex. Civ.App., 211 S.W.2d 331 (err. ref.).

Further, the decision of such County Board is final except in such gross abuses of its authority as constituted legal fraud. Mesquite I. S. D. v. Gross, 123 Tex. 49, 67 S.W.2d 242, 243; Patillo v. County School Trustees, Tex.Civ.App., 235 S.W. 2d 924; Higginbotham v. Concho County School Trustees, Tex.Civ.App., 220 S.W. 2d 213 (err. ref. n. r. e.).

█ Furthermore, where such County Board has exercised such authority, even if any question of such authority had been left, the Legislature of Texas has the full authority to validate such orders. See Article 2815g–25, Vernon's Annotated Civil Statutes; and in this instance, as recited supra, the Legislature had many times validated all of the boundaries involved in this action. As the trial court properly held the deposition of the State Commissioner of Education was not admissible for the purpose of showing that an appeal to him by the appellant, in seeking the order it coveted in this cause, had been dismissed or abandoned; this, for the reason that appellants having admitted that they did file such appeal, the law bound them to pursue that remedy to its final conclusion, which they did not do before appealing to the courts in this controversy. Fluellen v. Board of Education of Dallas County, Tex.Civ.App., 202 S.W.2d 510; Donie Independent School Dist. v. Freestone, etc., School District, Tex.Civ.App., 127 S.W.2d 205; Plains Common School District v. Hayhurst, Tex.Civ.App., 122 S.W.2d 322; Jennings v. Carson, Tex.Com.App., 220 S. W. 1090; Temple I. S. D. v. Proctor, Tex. Civ.App., 97 S.W.2d 1047; Miller v. Smiley, Tex.Civ.App., 65 S.W.2d 417; and South San Antonio Independent School District v. Martine, Tex.Civ.App., 275 S.W. 265, affirmed 115 Tex. 145, 277 S.W. 78. Neither did the court err in excluding the letter from appellants' attorney to it on August 23, 1951, as appears, supra, since—as the trial court held—it was plainly a self-serving declaration, hence had no place in a court trying such a controversy by the litigants who were dealing at arms' length with each other. Curtsinger v. Mc-

Gown, Tex.Civ.App., 149 S.W. 303; Klein v. Stahl, Tex.Civ.App., 219 S.W. 523; and Owens v. Navarro County Levee Improvement District, Tex.Civ.App., 281 S.W. 577; certified questions answered 115 Tex. 263, 280 S.W. 532. These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.